**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In Re | Case No. 23-7153 |
| SPD II MAKAIWA RESORT DEVELOPMENT, LLC, | Chapter 11 |
| Debtor. | Honorable David D. Cleary |
| 24 Members of Coconut Beach/Hawaii LLC, | Adv. Case No. 25-00260 |
| Plaintiff, | |
| v. | |
| Corban Kauai Chicago Lender LLC, | |
| Defendant. | |

**CORBAN KAUAI CHICAGO LENDER, LLC'S
ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT**

Corban Kauai Chicago Lender, LLC ("**Secured Lender**"), by and through its undersigned counsel, respectfully submits this answer (the "**Answer**") to the *Adversary Complaint under Bankruptcy Code §510* (the "**Complaint**" or "**Compl**.")[1] of the unsecured claimant known as 24 Members of Coconut Beach/Hawaii LLC (the "**Plaintiff**") in the above-captioned adversary proceeding (this "**Adversary Case**").[2]

**PARTIES**

1.      The Debtor is a New York company managed by Forefront EB-5 (HCR) LLC, managed by Jason Ding and Jeffrey Laytin (respectively "**Ding**" and "**Laytin**").

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning given to such terms in the Complaint.

[2] Plaintiff includes introductory narrative in its Complaint.  Plaintiff's introduction is purely narrative, to which Secured Lender need not respond.  To the extent a response is deemed necessary, Secured Lender denies the statements contained in Plaintiff's introduction.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 1**.

2.       Ding and Laytin are principals of the Debtor.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 2.**

3.       Plaintiff is a group of 24 members of Coconut Beach/Hawaii LLC, a New York company (hereafter "**CBH**").

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 3.**

4.       Defendant Corban Kauai Chicago Lender LLC ("**CKCL**").

**ANSWER: Paragraph 4 does not contain an allegation and therefore no response is required. To the extent Paragraph 4 is construed as an allegation of some kind, Secured Lender denies the allegation**.

5.       The term "Property" refers to real estate on the island of Kauai.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the vague allegations in this paragraph, and on that basis, denies the allegations in Paragraph 5.**

## JURISDICTION AND VENUE

6.       This Court has jurisdiction because an adversary complaint seeking subordination is a core proceeding under 28 U.S.C. §157(b)(2)(K).

**ANSWER: The allegations in Paragraph 6 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender admits that this Court has subject matter jurisdiction.**

7.       An action for subordination under Bankruptcy Code §510(c) should proceed as an adversary proceeding under Fed. R. Bankr. P. 7001(h).

**ANSWER: The allegations in Paragraph 7 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender admits the allegations in Paragraph.**

8.      Venue is proper under 28 U.S.C. §1409(a) as this adversary proceeding is associated with a bankruptcy case pending in this Court.

**ANSWER: The allegations in Paragraph 8 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender admits venue is proper.**

9.      Plaintiff consents to the entry of a final order by this Court in this adversary proceeding.

**ANSWER: There is no allegation in Paragraph 9 for which a response is required. To the extent that a response is required, Secured Lender admits the Plaintiff consents to entry of a final order.**

10.      The Debtor's principals, Ding and Laytin, provided an accounting of how the Debtor acquired the Property. This accounting was provided in related lawsuits. *Dou et al. v. Carillon Tower/Chicago LP*, 18-cv-7865 (N.D. Ill.) and *Li et al. v. Forefront EB-5 Fund (HCR) LLC*, 22-cv-7081 (N.D. Ill.)

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the vague allegations in this paragraph, and on that basis, denies the allegations in Paragraph 10.**

11.      Relevant portions of this accounting were placed on the docket at Doc. 365:6-11 and are attached hereto for reference as Exhibit 1.

**ANSWER: Secured Lender admits there is a document filed at docket no. 365. Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and on that basis, denies such allegations.**

12.      In 2014, Ding and Laytin began collaborating on two projects, both of which ended in bankruptcy and lawsuits, the first being a Chicago apartment building, and the second being a Hawaiian resort.

- 3 -

**ANSWER:, Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 12.**

13.     The capital stack for each project had three levels: (i) an owner/developer would contribute the land itself and some equity; (ii) Chinese investors would contribute mezzanine debt; and (iii) a senior lender would provide most funds needed to build the structures.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 13.**

14.     For the Chicago project, the owner/developer was Symmetry Tower/Chicago Project Owner LLC (the "**Chicago Project Owner**") and the mezzanine lender was Carillon Tower/Chicago LP ("**Carillon**").

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 14.**

15.     For the Hawaii project, the owner/developer was SPDII Makaiwa Resort Development LLC (the "**Debtor**"), and the mezzanine lender was Coconut Beach/Hawaii LLC ("**CBH**").

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 15.**

16.     The Chicago project was marketed first, with Chinese investors putting over $48 million into a Carillon account from November 2015 to March 2016.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 16.**

17.     The Hawaii project was marketed later, with Chinese investors putting $26,400,000 into a CBH account from April 2016 to October 2017.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 17.**

18.      These dates are important because the Property was bought in April 2016 with $7,500,000 of Chinese money that could only have been sourced from investors in Carillon with funds earmarked for the Chicago deal.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 18.**

19.      Ding and Laytin did not honor this structure of having each mezzanine lender make a loan directly to the owner/developer.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 19.**

20.      Instead, they diverted all money that arrived for Carillon (and, later, all that came for CBH) to a heretofore unknown entity they controlled called Symmetry Property Development II LLC ("**SPDII**").

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 20.**

21.      By analogy, SPDII was a repository of diverted Chinese investor money, first holding Chicago money and then commingled Chicago and Hawaii money.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 21.**

22.      The Property was purchased on or about April 15, 2016, for $15,000,000, a sum that the Debtor raised by diverting/borrowing $7,500,000 from SPDII and borrowing $7,500,000 from an entity owned by JDI Realty LLC ("**JDI**").

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 22.**

23.     The Property - the sole asset creditors are fighting over - was purchased with $7,500,000 of Chinese money earmarked for a Chicago project that was yanked out of SPDII and forcibly 'lent' to the Debtor.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 23.**

24.     The Property acquisition was structured so that only JDI - not SPDII - received a mortgage on the Property for its loan of $7,500,000.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 24.**

25.     This unequal treatment of Chinese investors was the foundation on which JDI took an exalted position of being the sole secured mortgage holder on the Property.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 25.**

26.     JDI made a loan of $7,500,000 and got a mortgage worth $15,000,000; the Chinese investors in SPDII also made a loan of $7,500,000 on the same day, but got no mortgage and no collateral.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 26.**

27.     During the pendency of the JDI loan, additional funds were taken from SPDII to pay JDI.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 27.**

28.     In Spring 2017, the Debtor's principals sought a new lender to replace JDI's loan, which was maturing.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 28.**

29.     They looked for assistance from a friend and long-time affiliate of the Debtor, Kraig Danielson of Corban Capital Partners LLC, whose alignment with the Debtor is evidenced by sharing a lawyer. *See Corban Capital Partners LLC v. Corban Kauai Chicago Lender LLC et al.*, 23-cv-157 (N.D. Ill.).

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 29.**

30.     Corban Capital Partners recruited Arena Capital Group to form CKCL (the "C" in the name "CKCL" being derived from Corban Capital Partners LLC) to be the new lender that would take out JDI's position.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 30.**

31.     On May 23, 2017, CKCL lent $6,500,000 to the Debtor in a refinancing transaction, paying off the JDI loan and vesting CKCL with the sole secured position on the Property.

**ANSWER:  Secured Lender admits that it made a secured loan to the Debtor on or about May 23, 2017 in the principal amount of $6,500,000.  Secured Lender admits further that it had the sole secured position on property owned by the Debtor on the Island of Kauai. Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and on that basis, denies the remaining allegations in Paragraph 31.**

32.     This perpetuated the injustice because CKCL lent $6,500,000 on property worth more than $15,000,000 while the Chinese investors lent $7,500,000 for no mortgage or collateral.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 32.**

33.     CKCL's loan to the Debtor was an insider loan by virtue of the benefit it bestowed on Danielson and also because it was part of a scheme whereby the insiders (Ding and Laytin) could deprive Chinese investors of collateral and thereby borrow more money on the Property; though not a direct lender to Ding and Laytin, CKCL facilitated the process whereby they refused to treat Chinese investors equitably and instead used Chinese money as a piggybank.

**ANSWER: The allegations in Paragraph 33 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

34.     CKCL knew that a Debtor was a start-up and not a going concern, so they were told by Ding that their loan would be repaid with Chinese money if no senior loan was forthcoming, as turned out to be the case. [testimony quotation omitted from this Answer]

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 34.**

35.     CKCL knew that the Property was worth at least $15,000,000, yet had an encumbrance of only $7,500,000 because the Chinese investors had been stiffed of a mortgage on their $7,500,000 loan from SPDII to the Debtor.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 35.**

36.     CKCL's purchase of JDI's position was analogous to a person who knowingly buys stolen goods – they are not a good faith purchaser and don't take clean title.

**ANSWER: The allegations in Paragraph 36 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

37. CKCL was on notice that its loan held a preferential position because the Debtor wrongfully withheld a mortgage favoring Chinese investors whose money the Debtor borrowed to buy the Property.

**ANSWER: The allegations in Paragraph 37 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

38. Nor can CKCL claim that the $7,500,000 from SPDII was a capital contribution to the Debtor instead of a loan, because CKCL knew from the Debtor's operating agreement that SPDII's capital contribution was only $100.

**ANSWER: The allegations in Paragraph 38 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

39. The Property should have been encumbered by a $7,500,000 mortgage in favor of SPDII alongside the JDI mortgage of $7,500,000. The withholding of a mortgage to SPDII meant that CKCL, as the subsequent lender, was afforded an outsized cushion and didn't have to compete with a mortgage of equal standing, even though the Chinese investors had lent more money to the Debtor and at an earlier time.

**ANSWER: The allegations in Paragraph 39 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

40. CKCL took advantage of this collateral cushion by lending more money to the Debtor on July 25, 2018, raising the loan principal to $9,914,000 and filing an amended mortgage to reflect the increased balance.

**ANSWER: Secured Lender admits the initial loan amount was increased to $9,914,000. The remaining allegations in Paragraph 40 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the remaining allegations.**

- 9 -

41.     CKCL was able to fully secure this increase in principal only because SPDII did not get a prior mortgage.

**ANSWER: The allegations in Paragraph 41 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

42.     During the pendency of the CKCL loan, CKCL received $282,000 in Chinese money from CBH, even though CBH was not a borrower.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 42.**

43.     Regardless, the Debtor defaulted on paying CKCL.

**ANSWER: Secured Lender admits that the Debtor defaulted on its obligations to Secured Lender pursuant to the terms of the governing documents between the Debtor and Secured Lender.**

44.     In 2019, CKCL filed a foreclosure action in Hawaii state court, claiming a lien of roughly $13,000,000 based on the increased principal plus myriad other fees. *Corban Kauai Chicago Lender LLC v. SPDII Makaiwa Resort Development LLC et al*, Case no. 5CC1910000034 (Hawaii 5th Cir. Ct).

**ANSWER: Secured Lender admits that it filed a foreclosure action in Hawaii state court in 2019.  Secured Lender denies the remaining allegations in Paragraph 44.**

45.     The Hawaii judge ordered a foreclosure sale via public auction, but on the day before the auction, the Debtor filed this Chapter 11 petition.

**ANSWER: Secured Lender admits the allegations in Paragraph 45.**

46.     The Debtor's bankruptcy Petition (Doc. 1) lists the Property as the sole asset of the bankruptcy estate, but failed to mention the $7,500,000 that the Debtor 'borrowed' from SPDII which enabled the purchase of this Property.

**ANSWER: The Debtor's bankruptcy petition is a legal document that speaks for itself. Secured Lender is without knowledge or information sufficient to form a belief as to the truth**

of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 46.

47.     If the $7,500,000 was a loan from SPDII to the Debtor it should have been properly secured with a mortgage; if it was converted money then the entire chain of transactions supporting CKCL was built on tortious or criminal acts.

**ANSWER: The allegations in Paragraph 47 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

48.     The Petition also failed to mention the $26,400,000, which the Debtor raised for CBH that was 'lent' to the Debtor via SPDII.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 48.**

49.     For more than a year of this action, the Petition wasn't corrected to reflect the CBH loan (Doc. 139), and it was never corrected to reflect the $7,500,000 that the Debtor 'borrowed' from SPDII to buy the Property in the first place.

**ANSWER: Secured Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies the allegations in Paragraph 49.**

50.     As the bankruptcy case progressed, CKCL put forth a series of reorganization plans that fraudulently and deceptively ignored the wrongdoing by the Debtor with respect to Chinese investors. Most recently, CKCL proposed a Plan whereby it would get 97-100% of the Property while Chinese investors would take a pro rata share from a contingent carve-out of $300,000 for all unsecured creditors.

**ANSWER: Secured Lender admits that it filed multiple plans of liquidation pursuant to the United States Bankruptcy Code and the various iterations of the plan speak for themselves. The remaining allegations in Paragraph 50 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

51.     Worse, under the CKCL Plan, Chinese investors get absolutely nothing for the $7,500,000, which allowed the Debtor to buy the Property, and upon which CKCL makes its entire claim.

**ANSWER: The allegations in Paragraph 51 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

52.     Expressed in numbers, CKCL plans to give itself a $23 million return on a $10 million investment, while Chinese investors get about $250,000 on a $31 million investment.

**ANSWER: The allegations in Paragraph 52 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

53.     CKCL's proposed Disclosure Statement misleadingly asserts that CKCL "funded the Debtor's ownership of the Property" (Doc. 323:17) when in reality CKCL did not enable the Debtor to purchase the Property – it knowingly refinanced and perpetuated an unjust loan structure.

**ANSWER: The allegations in Paragraph 53 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

54.     Bankruptcy Code §510(c)(1) empowers a bankruptcy court to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."

**ANSWER: Secured Lender admits that Paragraph 54 accurately quotes section 510(c)(1) of the Bankruptcy Code.**

55.     The purpose of §510(c) is to undo a creditor's wrongdoing and to demote the preferential status of bad-acting creditors.

**ANSWER: The allegations in Paragraph 55 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

56.     Equitable subordination requires a showing of inequitable conduct by a creditor, resulting in injury to another creditor or conferring an unfair advantage, and subordination is not prohibited by the Bankruptcy Code. These elements are satisfied.

**ANSWER: The allegations in Paragraph 56 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

57.     CKCL has acted inequitably because it knew that the Property was wrongfully left unencumbered at the expense of Chinese investors whose money was used to buy the land. CKCL papered over this injustice in its dealings in this Court.

**ANSWER: The allegations in Paragraph 57 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

58.     In blunt terms, the Debtor screwed over Chinese investors to give CKCL a greater recovery in a bankruptcy scenario, and CKCL was aware of this injustice and ratified it.

**ANSWER: The allegations in Paragraph 58 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

59.     The foregoing alleges inequitable conduct by CKCL, harm to the Plaintiff, and there is nothing in the Bankruptcy Code preventing the subordination of CKCL's claim to equal or lesser status than that of CBH.

**ANSWER: The allegations in Paragraph 59 constitute conclusions of law, to which no response is required. To the extent that a response is required, Secured Lender denies the allegations.**

## AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to show Secured Lender engaged in inequitable conduct.

2.     Secured Lender's conduct did not cause injury to other creditors nor created an unfair advantage.

3.     Secured Lender is not an "insider" of the Debtor and its actions at all times constituted normal lender conduct and enforcement of bargained-for contractual rights.

4.     Here, equitable subordination of the Secured Lender's claim under section 510 of the Bankruptcy Code is inconsistent with the Bankruptcy Code.

5.     Insofar as Plaintiff is seeking equitable relief, its claim is barred to the extent it is discovered that other equitable doctrines, including but not limited to estoppel and/or unclean hands, preclude the relief it is seeking.

6.     Secured Lender expressly reserves the right to assert additional defenses in the event that discovery indicates such defenses are appropriate.

WHEREFORE, the Secured Lender requests that the Complaint be dismissed in its entirety, with prejudice.

[Signature on following page]

Dated: April 29, 2026

Respectfully submitted,

REED SMITH LLP

By: */s/Robert B. McLellarn*
Robert B. McLellarn (ARDC No. 6316716)
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone: (312) 207-1000
rmclellarn@reedsmith.com

and

Joseph J. Tuso (admitted *pro hac vice*)
Reed Smith LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8228
E-Mail: jtuso@reedsmith.com

and

Jared S. Roach (admitted *pro hac vice*)
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
E-Mail: jroach@reedsmith.com

*Counsel for Corban Kauai Chicago Lender, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert B. McLellarn, hereby certify that on April 29, 2026 I caused a copy of the foregoing CORBAN KAUAI CHICAGO LENDER, LLC'S ANSWER AND DEFENSES TO PLAINTIFF'S ADVERSARY COMPLAINT to be filed in the above-captioned proceeding. Notice of this filing was sent automatically, via the Court's CM/ECF service, to all parties that have filed an electronic appearance in the proceeding.

*/s/ Robert B. McLellarn*
Robert B. McLellarn
(ARDC No. 6316716)